# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

G. D. THOMPSON                                                                    PLAINTIFF

v.                                                                    No. 4:16CV107-NBB-DAS

MISSISSIPPI DEPARTMENT
OF CORRECTIONS, ET AL.                                                          DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of G. D. Thompson, who

challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison

Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The

plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action

against "[e]very person" who under color of state authority causes the "deprivation of any rights,

privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff

alleges that the defendants violated his right to the free exercise of religion under both the First

Amendment to the Constitution and the Religious Land Use and Institutionalized Persons Act by

enforcing a Mississippi Department of Corrections policy requiring male inmates to keep their hair cut

shorter than a certain length. The defendants have moved for summary judgment, arguing that they

enjoy qualified immunity from civil suit. The plaintiff has responded to the motion, and the matter is

ripe for review. For the reasons set forth below, the defendants' motion for summary judgment will be

granted as to the plaintiff's claim for damages; however, under recent binding precedent from the Fifth

Circuit Court of Appeals, the plaintiff's request for prospective injunctive relief will be granted.

## Summary Judgment Standard

Summary judgment is appropriate if the "materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including those

made for purposes of the motion only), admissions, interrogatory answers, or other materials" show

that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary

material of record were reduced to admissible evidence in court, it would be insufficient to permit the

nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629,

633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066

(1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to

set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc.,

477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v.

Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline

Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*,

477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment. Factual disputes that are

irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts

in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327.

"Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving

party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th

Cir. 1992).

The facts are reviewed drawing all reasonable inferences in favor of the non-moving party.

*Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*,

177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198

(5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both

parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

The very purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine issue for trial." Advisory Committee Note to the 1963 Amendments to Rule 56. Indeed, "[t]he amendment is not intended to derogate from the solemnity of the pleadings[;] [r]ather, it recognizes that despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The non-moving party (the plaintiff in this case), must come forward with proof to support each element of his claim. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986), "conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 871-73, 110 S.Ct. 3177, 3180 (1990), "unsubstantiated assertions," *Hopper v. Frank,* 16 F.3d 92 (5th Cir. 1994), or by a mere "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082 (5th Cir. 1994). It would undermine the purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990). In considering a motion for summary judgment, a court must determine whether the non-moving party's allegations are *plausible*. *Matsushita, supra*. (emphasis added). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009) (discussing plausibility of claim as a requirement to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

In considering a motion for summary judgment, once the court "has determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, [the ultimate decision becomes] purely a question of law." *Scott v. Harris*, 550 U.S. 372, 381 (2007) (emphasis in original). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on the motion for summary judgment." *Id.* at 380.

## Undisputed Material Facts

G. D. Thompson practices the Rastafarian Nazarite religion (and has done so since the 1970s), and one of the tenets of that religion is to grow one's hair out until it forms dreadlocks. The Mississippi Department of Corrections enforces a policy that all male inmates maintain their hair less than a certain length, though the court cannot discern the length limit from the pleadings and motions. Thompson has often requested, informally and through the formal grievance process, that he receive a religious exemption from the Mississippi Department of Corrections haircut policy; however, Warden Simon just tells him, "I am going by policy." On March 23, 2016, Warden Simon issued an order for Thompson to get his hair cut. Captain Reid, Lt. R. Benford then told Thompson to cut his hair. He refused. At this point, Lt. Benford and two other correctional officers pinned Thompson down and cut off "copious amounts of hair from the base of the plaintiff's dreadlocks." Captain Reid recorded the compulsory haircut using a video camera. In addition, various staff members have repeatedly issued Rule Violation Reports against Thompson for failing to have his hair cut, as ordered.

## Thompson's First Amendment Free Exercise Claim

A prison policy or practice will not be found unconstitutional as long as it is reasonably related to a legitimate penological objective of the facility. *Hay v. Waldron*, 834 F.2d 481, 487-87 (5th Cir.

1987).  This general statement of the law has been upheld when the regulation completely stifled a group of Muslim inmates' opportunity to attend Jumu'ah, the central religious ceremony of the Muslim faith, analogous to Christian Sunday services or Saturday services of the Jewish faith. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 360  (1987).  This rule has also been applied to require Rastafarians to cut their hair, even though keeping one's hair unshorn and unwashed is a tenet of the Rastafari religion.  *Scott v. Mississippi Dept. of Corrections*, 961 F.2d 77 (5th Cir. 1992), *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995).  *Scott* and *Hicks* are controlling as to Thompson's First Amendment claims in this case; as such, the motion by the defendants for summary judgment will be granted as to those claims.

### Application of RLUIPA

The Religious Land Use and Institutionalized Persons Act of 2000, § 2 et seq., 42 U.S.C.A. § 2000cc et seq. ("RLUIPA") prohibits imposing a substantial burden on an inmate's religious exercise unless that burden furthers a compelling interest and is the least restrictive means of furthering that interest.  42 U.S.C. § 2000cc–1(a).  RLUIPA provides a private cause of action for an inmate to enforce this right.  *Id*. § 2000cc–2(a).  It states, in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

*Id.* at § 2000cc–1(a).

"Congress enacted RLUIPA to address 'frivolous or arbitrary' barriers impeding [prisoners'] religious exercise...." *Davis v. Davis*, 826 F.3d 258, 264 (5th Cir. 2016) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 716, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005)).  RLUIPA's provisions

are sweeping: "Congress enacted RLUIPA ... 'in order to provide very broad protection for religious liberty.'" *Holt v. Hobbs*, ⸺ U.S. ⸺, 135 S.Ct. 853, 859, 190 L.Ed.2d 747 (2015) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, ⸺ U.S. ⸺, 134 S.Ct. 2751, 2760, 189 L.Ed.2d 675 (2014)).

RLUIPA established a burden-shifting framework for analysis. *Ali v. Stephens*, 822 F.3d 776, 782 (5th Cir. 2016). First, the plaintiff must make two showings: "(1) the relevant religious exercise is 'grounded in a sincerely held religious belief' and (2) the government's action or policy 'substantially burden[s] that exercise' by, for example, forcing the plaintiff 'to engage in conduct that seriously violates [his or her] religious beliefs.'" *Id.* at 782–83 (alterations in original) (quoting *Holt*, 135 S.Ct. at 862). Once the plaintiff satisfies these requirements, the burden shifts to the government, which must "show that its action or policy (1) is in furtherance of a compelling governmental interest and (2) is the least restrictive means of furthering that interest." *Id.* at 783.

To determine whether the government has satisfied its dual RLUIPA burden, a court must balance deference to the expertise of prison officials with its responsibility to apply RLUIPA's rigorous standard. "Prison officials are experts in running prisons and evaluating the likely effects of altering prison rules," *Holt*, 135 S.Ct. at 864, and lower courts must "respect that expertise." However, courts need not give "unquestioning deference" to the government. *Id.* Thus, "[r]ather than deferring to the prison's general policy regarding a matter," courts must examine the prison's asserted interests as to the risks and costs of the accommodation sought. *Ali*, 822 F.3d at 783. For this reason, "policies grounded on mere speculation, exaggerated fears, or post-hoc rationalizations will not suffice to meet [RLUIPA's] requirements." *Davis*, 826 F.3d at 265 (quoting *Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 533 (11th Cir. 2013)); *see also*

*Holt*, 135 S.Ct. at 867 (Sotomayor, J., concurring) ("Indeed, prison policies 'grounded on mere speculation' are exactly the ones that motivated Congress to enact RLUIPA." (quoting 106 Cong. Rec. 16699 (2000))).

In a very recent case legally indistinguishable from this one, the Fifth Circuit invalidated a prison regulation requiring a Rastafarian to cut off his dreadlocks. *Ware v. Louisiana Dep't of Corr.*, No. 16-31012, 2017 WL 3205804, at *7 (5ᵗʰ Cir. July 28, 2017). In *Ware*, the Fifth Circuit determined that requiring an adherent of the Rastafari religion to cut his hair placed a substantial burden on the inmate's religious beliefs. *Id*. at *4. The State argued that the grooming policy assisted with contraband control, inmate identification, inmate hygiene, and inmate and employee safety. *Id*. at *2. The Fifth Circuit held that these stated reasons did not constitute a compelling state interest because nearly half the state inmates in Louisiana (those confined in local jails due to state facility overcrowding) were not subject to the grooming policy. The underinclusiveness of the policy's application undermined the State's argument that its interests in enforcing the policy were compelling . *Id.* at *5. The Fifth Circuit recounted the strong language in the Supreme Court's analysis in *Holt, supra*, that the prison in that case did not require its inmates to go "'bald, barefoot, or naked," even though head hair, shoes, and clothing are more plausible places to hide contraband than a beard.'" *Id.* at *4. In addition, the State could offer no evidence to support its various rationales for not enforcing the grooming policy as to inmates held in parish and local jails.

Finally, the Fifth Circuit held that the policy of cutting inmates' hair short was not the least restrictive means of achieving its stated interests, noting that 39 other jurisdictions, including the Federal Bureau of Prisons, "either outright allow [inmates] to have dreadlocks or afford [them] the opportunity to apply for a religious accommodation that would allow

dreadlocks." *Id*. at * 6.  Though one state need not follow the policies of her sister states, when

an overwhelming majority of those states take the opposite approach, the state "'must, at a

minimum, offer persuasive reasons why it believes that it must take a different course.'"  *Id.* at

*7, (quoting *Holt*, 135 S.Ct. at 859).  The State of Louisiana did not offer persuasive reasons for

the different policy, and the Fifth Circuit reversed the District Court's judgment, rendered a

decision granting Ware's request for a declaration that the grooming policies did not apply to

him, and enjoined the Louisiana Department of Corrections from enforcing the policies against

him.  *Id*.  As Mr. Thompson's case is legally indistinguishable from *Ware*, then he is also entitled

to prospective injunctive relief as to the grooming policy.

### Eleventh Amendment Immunity

The plaintiff's claims for damages against the Mississippi Department of Corrections, as well

as all defendants in their official capacities, because the Eleventh Amendment prohibits actions for

damages against a state actor without the state's consent. *Brooks v. George County, Mississippi*, 84

F.3d 157, 168 (5th Cir. 1996).  Sovereign Immunity extends to any state agency or entity deemed to be

"an arm of the state." *Perez v. Region 20 Educ. Serv. Ctr*., 307 F.3d 318, 326 (5th Cir.2002). The

Mississippi Department of Corrections is an arm of the State of Mississippi is thus cloaked with the

State's Eleventh Amendment immunity from suit. *See Williams v. Mississippi Dept. of Corrections*,

2012 WL 2052101 at * 1 -2 (S.D. Miss. 2012) ("MDOC is considered an arm of the State of

Mississippi" and is immune under the Eleventh Amendment)*; Dandridge v. Mississippi*, 2009 WL

4940105, at 7 (S.D. Miss. 2009) (same).

As MDOC is an arm of the state, its officers and employees are officers and employees of the

state, and are similarly entitled to sovereign immunity from monetary damages in their official

capacities. *See Am Bank and Trust Co. v. Dent*, 982 F.2d 917, 921 (5th Cir.1993) (citing *Will v. Mich.*

*Dep't of State Police*, 491 U.S. 58, 71 (1989) ("a suit against a state official in his or her official capacity. . . is no different from a suit against the State itself.")). Thus, defendants Simon, Rein and Benford have immunity against Thompson's claims for monetary damages against them in their official capacities under Section 1983. The State has not consented to such actions; thus, the plaintiff's claim for damages against these defendants, in their official capacities, will be dismissed with prejudice.

## Qualified Immunity

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To overcome the qualified immunity defense, a plaintiff must meet a two-pronged test. He must first allege a violation of a clearly established constitutional right. *Wilkerson v. Stalder*, 329 F.3d 431, 434 (5th Cir.2003); *Heitschmidt v. City of Houston*, 161 F.3d 834, 836-37 (5th Cir.1998). "To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004) (*quoting Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). In addition to alleging the violation of a clearly established constitutional right, a plaintiff must also allege facts showing that the defendant's conduct was objectively unreasonable in the light of the law established at the time of the incident. *Heitschmidt*, 161 F.3d at 836-37.

The standard of conduct to determine qualified immunity embodies "reasonableness;" "qualified immunity affords 'ample protection to all but the plainly incompetent or those who

knowingly violate the law." *Id.* at 384 (*see also Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092,

1096 (1985) (if officers of reasonable competence could disagree on the issue, immunity should be

recognized); *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039 (1987). A defendant's

acts are deemed to be "objectively reasonable" unless all reasonable officials in the defendant's

circumstances would have known that the conduct at issue violated clearly established law.

*Thompson v. Upshur County, Texas*, 245 F.3d 447, 456 (5ᵗʰ Cir. 2001). "Pre-existing law must

dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for

every like-situated, reasonable government agent that what defendant is doing violates federal law in

the circumstances." *Pasco v. Knoblauch*, 566 F.3d 572, 578-579 (5ᵗʰ Cir. 2009) (citing *Pierce v.*

*Smith*, 117 F.3d 866, 882 (5ᵗʰ Cir. 1997)).

In this case, at the time of the incident, Fifth Circuit precedent established that prisons

could impose a ban on long hair, including dreadlocks, without running afoul of RLUIPA.

*Longoria v. Dretke*, 507 F.3d 898, 901 (5ᵗʰ Cir. 2007) (prison grooming policy requiring short

hair did not violate RLUIPA). District Courts within the Fifth Circuit have since cited *Longoria*

as binding authority on the issue. *See Thunderhorse v. Pierce*, 364 F. App'x 141, 146 (5ᵗʰ Cir.

2010) (not reported), *Legate v. Stephens*, No. 2:13-CV-148, 2014 WL 3588489, at *3 (S.D. Tex.

July 21, 2014) (not reported).

The law began to move in the other direction in 2015, when the Supreme Court upheld an

inmate's RLUIPA challenge to a prison policy requiring short *beards* (rather than short head

hair). *Holt v. Hobbs*, 135 S.Ct. 853 (2015). On May 2, 2016, less than a month after the filing of

the instant case, Fifth Circuit, citing *Holt*, reached the same conclusion. *Ali v. Stephens*, 822

F.3d 776 (5ᵗʰ Cir. 2016) (overturning a prison ban on short beards for prisoners with religious

objections to cutting their beards). The first Fifth Circuit case granting relief under RLUIPA

from a prison regulation requiring short *head hair* was decided on July 28, 2017, more than a year after the events giving rise to this case. *Ware v. Louisiana Dep't of Corr.*, No. 16-31012, 2017 WL 3205804, at *1 (5th Cir. July 28, 2017). Thus, as late as mid-2014, district courts within the Fifth Circuit had upheld prison regulations requiring inmates to wear their *hair* short, *Legate, supra*, and no binding authority to the contrary arose until July 2017 in *Ware*. For this reason, the court holds that the law regarding hair length restrictions under RLUIPA was not clearly established on March 23, 2016, the time of the incidents giving rise to this case. As such, the defendants in this case enjoy qualified immunity regarding their enforcement of the MDOC policy requiring inmates to wear their hair short.

### Prospective Injunctive Relief

As the defendants acknowledge, an exception to both qualified immunity and Eleventh Amendment Immunity is a request for prospective injunctive relief. "Neither absolute nor qualified immunity extends to suits for injunctive or declaratory relief under § 1983." *Orellana v. Kyle*, 65 F.3d 29, 33 (5th Cir. 1995) (*quoting Chrissy F. by Medley v. Miss. Dep't of Pub. Welfare,* 925 F.2d 844, 849 (5th Cir. 1991)). The Fifth Circuit based its decision in *Ware* on the State's failure to provide evidence to support its contention that the short hair requirement fulfilled a compelling state interest. Thus, its holding does not, in theory, operate as a blanket rule compelling prisons to adopt policies permitting religious exceptions to a short-hair requirement. If a state were able to produce evidence to show a compelling state interest in enforcing a ban on long hair, then even under *Ware*, such a ban might be permissible. However, the Fifth Circuit's inclusion of the Supreme Court's strong "bald, barefoot, or naked" language from *Holt* seems indicate that it would take strong evidence, indeed, to support a prison policy requiring short hair in all instances.

In order to prevail on a request for permanent injunctive relief, a plaintiff must prove:

> (1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. See, *e.g., Weinberger v. Romero—Barcelo,* 456 U.S. 305, 311–313, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982); *Amoco Production Co. v. Gambell,* 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987). The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion. See, *e.g., Romero–Barcelo,* 456 U.S., at 320, 102 S.Ct. 1798.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641 (2006).

As the plaintiff was compelled to violate a tenet of his religion, Rastafari, by having his hair forcibly shorn, he has suffered irreparable injury. Certainly, remedies at law are insufficient to compensate for such injury. As the injunction would require only that the defendants permit him to grow his hair, an event that occurs naturally over time, there is no hardship on the defendants from issuing the injunction. Finally, the public interest is served by permitting citizens to freely exercise their religious beliefs and observances, with minimal restrictions as necessary in a prison environment, in according with the Constitution and laws of the United States. Thus, all four factors favor the granting of a permanent injunction that the defendants permit Mr. Thompson to grow his hair according to the tenets of his religion, and the court will issue an injunction to that effect.

## Conclusion

For the reasons set forth above, the defendants' motion for summary judgment is granted as to the plaintiff's claims for damages.  However, the plaintiff's request for prospective injunctive relief will be granted.  In light of the court's ruling, the plaintiff's motion for a temporary restraining order or preliminary injunction will be dismissed as moot.

**SO ORDERED**, this, the 17th day of August, 2017.

 /s/ Neal Biggers
NEAL B. BIGGERS
SENIOR U. S. DISTRICT JUDGE